THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, *v.* ETHELYN FERGUSON, Defendant-Appellee.

First District (2nd Division)   Nos. 76-371, 76-372 cons.

Opinion filed March 29, 1977.

Bernard Carey, State's Attorney, of Chicago (Laurence J. Bolon, Iris E. Sholder, and Timothy Quinn, Assistant State's Attorneys, of counsel), for the People.

Howard D. Geter, Jr., of Chicago, for appellee.

Mr. JUSTICE PERLIN delivered the opinion of the court:

The State appeals from a judgment of the trial court quashing a search warrant and suppressing evidence seized thereunder. (Ill. Rev. Stat. 1975, ch. 110A, par. 604(a)(1).) The sole issue presented for review is whether the trial court erred in finding that the information supporting the issuance of the search warrant was obtained unconstitutionally.

We reverse.

On February 28, 1975, Officer Edgar Buck of the Chicago Police Department, who was assigned to a gambling unit, filed a complaint for issuance of a search warrant for "the 2nd floor apartment, located at 308 East 46th Street Chicago Illinois" in order to seize "All policy lottery writings, policy result slips, related U.S. Currency and all other related gambling paraphernalia."

The affidavit of Officer Buck related his observations of activities in and around the 46th Street premises. On February 26, 1975, at about 9 a.m. he saw several "elderly" people reading what he knew to be "policy result slips" as they entered and departed from the 46th Street premises. He then positioned himself where he could observe the activity in the second floor apartment. Two women were seated at a table as several people stood around the table reading "policy result slips." The two women appeared to be writing as they talked with these people. The affiant observed these activities for approximately 45 minutes. On February 27, 1975, at about 9 a.m. Officer Buck resumed his position of surveillance and again observed several people enter and leave the apartment in question. Some were reading "policy result slips" as they left the apartment. The affiant continued his observation until about 10:30 a.m., but could not at this time see into the apartment because the curtains were closed. The search warrant was issued and executed on February 28, 1975. Following the search pursuant to the warrant, a misdemeanor complaint was filed charging defendant with a gambling offense. Ill. Rev. Stat. 1973, ch. 38, par. 28—1(a)(8).

Defendant filed a motion to quash the search warrant and to suppress

evidence seized thereunder. At the hearing on the motion defendant challenged "the face of the affidavit" and alleged that "the police officer was on the second floor looking through a window." Officer Buck testified that he observed the activities through the second floor window while he "was in a vacant lot approximately sixty feet away from the building itself. I used binoculars to see when the shades were up." The trial court then sustained defendant's motion without expressly stating the findings of fact and conclusions of law upon which its order was based. This appeal followed.

At the outset we note that section 114—12(e) of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1975, ch. 38, par. 114—12(e)) provides: "The order or judgment granting or denying the motion [to suppress evidence illegally seized] shall state the findings of facts and conclusions of law upon which the order or judgment is based."

On appeal the State contends that the information which constituted the basis for issuance of the search warrant was obtained in a constitutionally permissible manner. Officer Buck testified that he saw people with "policy result slips" enter and exit an apartment. He related that he then stood in a vacant lot 60 feet from the apartment building and used binoculars to observe the activity in the apartment. Defendant argues that the only way Officer Buck could have observed the conduct he claims to have observed was by means of trespass on defendant's property.

■■ ■ Evidence obtained as a result of policemen standing on the *defendant's premises* and looking into defendant's window constitutes a search in violation of defendant's fourth amendment "right to be let alone." (*Brock v. United States* (5th Cir. 1955), 223 F.2d 681; *California v. Hurst* (9th Cir. 1963), 325 F.2d 891; *Texas v. Gonzales* (5th Cir. 1968), 388 F.2d 145.) Moreover, what a person "seeks to preserve as private, even in an area accessible to the public, may be constitutionally protected." (*Katz v. United States* (1967), 389 U.S. 347, 351, 19 L. Ed. 2d 576, 582, 88 S. Ct. 507, 511.) The *Katz* court thus found that portion of a defendant's telephone conversation overheard by the use of an electronic device attached to the outside of a public telephone booth amounted to an unreasonable search. *Katz*, however, limited such constitutional protection to situations where a person manifested "an actual (subjective) expectation of privacy" and that expectation is accepted by society as "reasonable." Thus a person may not even be protected in his own home when he manifests activities to the "plain view" of outsiders "because no intention to keep them to himself has been exhibited." *Katz*, 389 U.S. 347, 361, 19 L. Ed. 2d 576, 588, 88 S. Ct. 507.

Recently the use of binoculars to observe activities in a person's apartment was found not of itself to constitute an unreasonable search. (*People v. Ciochon* (2d Dist. 1974), 23 Ill. App. 3d 363, 319 N.E.2d 332.)

The *Ciochon* court found it necessary to determine the circumstances surrounding the use of binoculars before it could rule on any alleged violation of a defendant's fourth amendment rights. The appellate court reversed and remanded since the trial court's hearing did not reveal the surrounding circumstances.

The case at bar differs from *Ciochon* in that the trial court here, prior to ruling on defendant's motion to suppress did in fact conduct a hearing which failed to produce evidence to establish any trespass. No person claims to have seen Officer Buck on a back porch or in any location which would amount to trespass. Officer Buck's uncontradicted testimony is that he used binoculars to observe the apartment activities after he had seen people entering and leaving the apartment with "policy result slips." Moreover, he testified that he saw the people in the apartment from a vacant lot while standing 60 feet from the building and that defendant took no steps to obstruct his view through the apartment window.

■■ Defendant does not contend that Buck did not see what he claims to have seen. She attacks only the manner in which Buck claims to have viewed the apartment, raising the question of physical impossibility. If Buck stood 60 feet from the building and used binoculars to view the apartment described as 45 feet from the ground, defendant asserts that Buck could only have seen the apartment ceiling or the underside of the table. The argument thus follows that Buck could have seen what he claims to have seen only from the back porch of the apartment. Such argument, however, is mere speculation. Moreover, in light of *People v. Bak* (1970), 45 Ill. 2d 140, 258 N.E.2d 341, and its progeny, probable cause for the issuance of a search warrant is to be tested only by the evidence originally presented to the judicial officer who issues the warrant. If the judicial officer finds the evidence worthy of belief and sufficient to form probable cause, such judicial determination cannot be relitigated by one subjected to the search.

■■ In summary, defendant does not contest the accuracy of Officer Buck's testimony relative to the activity which transpired within her apartment nor does she allege any violation of her "expectation of privacy." Her primary contention appears to be that Officer Buck was a trespasser. Officer Buck saw suspicious activity outside the apartment before he used the binoculars. Moreover, defendant made no effort to block an outsider's view through the apartment window. The conclusion that Buck was a trespasser was based on speculation only.

Accordingly, the judgment of the circuit court is reversed and the cause remanded for further proceedings.

Reversed and remanded.

DOWNING, P. J., and STAMOS, J., concur.