THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, *v.* RONALD G. COLLINGS, JR., Defendant-Appellee.

Fourth District   No. 16645

Opinion filed April 23, 1981.

James R. Benson, State's Attorney, of Paxton (Robert J. Biderman and David E. Mannchen, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Daniel D. Yuhas and Lawrence Bapst, both of State Appellate Defender's Office, of Springfield, for appellee.

Mr. JUSTICE GREEN delivered the opinion of the court:

The State appeals an order of the circuit court of Ford County entered September 11, 1980, quashing a search warrant and suppressing evidence seized in its execution. The order was entered on the motion of defendant, Ronald G. Collings, Jr., who had been charged in that court on May 16, 1980, with two counts of unlawful possession of controlled substances (Ill. Rev. Stat. 1979, ch. 56½, par. 1402) and one count of unlawful possession of a substance containing more than 30 grams but less than 500 grams of cannabis. Ill. Rev. Stat. 1979, ch. 56½, par. 704(d).

The warrant had been issued upon the verified complaint of Ronald Rasmus which stated in pertinent part:

"I am a police officer for the City of Paxton, Ford County, Illinois. A confidential source has told me about seeing cocaine in Apartment 11 at 800 South High, Paxton, Illinois. *The source has seen cocaine before and recognized this substance as being cocaine.* The source saw the cocaine late this afternoon between 4 and 6 p.m. This source has given me information on four separate occasions within the past year. Each time the information proved to be true. To the best of my knowledge this source has never been convicted of a crime and is not currently charged with a crime." (Emphasis added.)

The trial court concluded that under the precedent of *People v. Palanza* (1978), 55 Ill. App. 3d 1028, 371 N.E.2d 687, the italicized portion of the complaint was insufficient to satisfy one of the requirements of *Aguilar v. Texas* (1964), 378 U.S. 108, 12 L. Ed. 2d 723, 84 S. Ct. 1509, that such a complaint when based on information given to the affiant by an unidentified informer must show the basis of the informant's knowledge of the facts the informant is stated to have related. It reluctantly granted the motion to quash and suppress.

We agree that the case on appeal is analogous to *Palanza*, where the affiant set forth the basis of the informer's knowledge in these words:

" '* * * that informant was present in the above described premises within the past 72 hours and while there did personally observe a quantity of a white crystalline substance which was represented to the informant by a white male occupant of the premises to be cocaine. Informant has observed cocaine on numerous occasions in the past and is thoroughly familiar with its appearance. The informant states that the white crystalline powder he observed in the above described premises appear to him to be cocaine.' " (55 Ill. App. 3d 1028, 1029, 371 N.E.2d 687, 688.)

There the informer was stated to have observed cocaine on numerous occasions and to be thoroughly familiar with it. Here the complaint only stated that the informer had seen cocaine before. In *Palanza*, the

complaint alleged that the informer claimed to have been told by an occupant of the premises that the suspected substance was cocaine, while here no such contention was made. The *Palanza* court deemed the allegation to be worthless hearsay upon hearsay, citing *United States v. Roth* (7th Cir. 1967), 391 F.2d 507. Nevertheless, the *Palanza* affidavit was at least somewhat stronger than that here.

In *Palanza*, evidence was presented and held to be properly before the court that a person cannot tell from its appearance whether a white powdery substance is cocaine. Here, no such evidence was before the court, but the State does not dispute the accuracy of the assertion. The trial judge's reluctance to grant the order was based upon his belief there are many surrounding circumstances in which an informant can see a white powdery substance and determine with a high degree of likelihood that the substance is cocaine yet be unable to articulate the totality of those circumstances.

We cannot agree with the State that *Palanza* and the trial court's ruling here are contrary to prior authority in this State as shown by the following cases. In *People v. Rogers* (1978), 59 Ill. App. 3d 396, 375 N.E.2d 1009, while holding a seizure to have been improper for other reasons, we deemed an affidavit for the search warrant to have been sufficient when an informant was stated to have described the substance he identified as marijuana as a brownish vegetable material in plastic bags. The material was distinctive in appearance and in a type of container used in selling marijuana. In *People v. Beck* (1975), 28 Ill. App. 3d 782, 329 N.E.2d 325, the informant was stated to have gone to a second floor apartment and purchased a packet containing fine white powder known by the informant to be heroin. There the powdered substance was in the type of container used in the drug trade, and the fact that the substance was sold from a private residence increased the likelihood that the substance was contraband.

The State correctly asserts that the *Palanza* type affidavit has been held sufficient in other States. Professor Wayne LaFave, although apparently approving the rationale of *Palanza*, has pointed out that its holding would likely be rejected by most courts. He has stated:

"* * * caution is called for when the offense can be viewed by an observer but the critical facts are of such a nature that they are not subject to ready determination by the average person, but unfortunately the courts seldom exercise this caution. Thus, an informant's allegation that he saw the defendant in possession of counterfeit money is deemed sufficient without any explanation as to how it was determined that the money was counterfeit in character, and an assertion by an informant that he saw illegal drugs or the like at a certain place is regularly accepted without

any showing as to how the informant was able to identify the substance. Similarly, courts—including the United States Supreme Court [citing *McCray v. Illinois* (1967), 386 U.S. 300, 87 S. Ct. 1056, 18 L. Ed. 2d 62]—seem to think it is enough that an informant says he 'saw' a sale of narcotics, even without any explanation as to how it was known that a sale was occurring or that the object being sold was in fact narcotics. Because even trained police sometimes jump to the unwarranted conclusion that they have witnessed such an occurrence, it is strange that such allegations by informants, which are conclusory as to the most critical facts, should so readily be accepted. It is said that an informant's claim that he saw narcotics shows the informant is relying on 'something more substantial than a casual rumor circulating in the underworld or an accusation based merely on an individual's general reputation' [citing *United States v. Acosta* (5th Dist. 1974), 501 F.2d 1330] but this really is not true for if the informant cannot identify the substance he has seen then his conclusion that it is narcotics may in fact be based on rumor or reputation." 1 LaFave, Search and Seizure §3.3, at 539-40 (1978).

In *McCray*, the United States Supreme Court upheld an Illinois narcotics offense conviction which hinged upon the propriety of the trial court's denial of a motion to suppress heroin seized by police officers from an accused after searching him without a warrant. The issue on review was the constitutional propriety of the search and seizure. The State claimed the officers to have had probable cause because they had received information from an unnamed informant who told them that the accused "was selling narcotics and had narcotics on his person and that he could be found in the vicinity of 47th and Calumet" at that time. (386 U.S. 300, 302, 18 L. Ed. 2d 62, 66, 87 S. Ct. 1056, 1058.) One of the officers testified to having been familiar with the informant for about one year and that during that time the informant had given the police reliable information about narcotic activities on about 15 times and the information had resulted in numerous arrests and convictions. Most of the majority opinion discussed the propriety of the State withholding the name of the informer, but the opinion also stated, "The testimony of each of the officers informed the court of the 'underlying circumstances from which the informant concluded that the narcotics were where he claimed they were'" (386 U.S. 300, 304, 18 L. Ed. 2d 62, 67, 87 S. Ct. 1056, 1059), citing *Aguilar* and referring to *United States v. Ventresca* (1965), 380 U.S. 102, 13 L. Ed. 2d 684, 85 S. Ct. 741.

■■ As indicated in *McCray*, in determining whether the requirements of *Aguilar* have been met *Ventresca* must also be considered. There the court said that in passing on the sufficiency of affidavits for search

warrants we must recognize that they are often drawn by "non-lawyers in the midst and haste of a criminal investigation." (380 U.S. 102, 108, 13 L. Ed. 2d 684, 689, 85 S. Ct. 741, 746.) The concerns of the trial court were similar to the warning of *Ventresca*. The *Palanza* court quoted from an article by Professor LaFave to set forth ways by which an informant may be shown to have a sufficient basis to have an opinion as to the nature of a substance claimed to be a narcotic or other illicit substance. Those methods were:

> " '[A] previously demonstrated familiarity with drugs by the informant, an admission to the informant by the possessor that the substance observed is what the informant says it is, an observed use or treatment of the substance in a manner unique to the type of substance the informant says it is, an acquisition of a part of the substance by the informant for testing and identification by the police officer, or a use of a part of the substance by the informant followed by the effects to be expected if it is what the informant says it is.' (*LaFave, Probable Cause from Informants: The Effects of Murphy's Law on Fourth Amendment Adjudication*, 1977 U. Ill. L.F. 1, 39-40)." 55 Ill. App. 3d 1028, 1030-31, 371 N.E.2d 687, 689.

■■ The *Palanza* court also indicated that a description of the appearance of the substance would have been sufficient had it been unique in appearance. The opinion noted that in *People v. Ranson* (1972), 4 Ill. App. 3d 953, 282 N.E.2d 462, and *People v. Rivera* (1970), 130 Ill. App. 2d 321, 264 N.E.2d 699, the substances in question were stated to have been sold to the informant as narcotics. In *McCray*, the basis of the informant's knowledge was shown to be more reliable than in the case at bar. There, the accused was said to be selling the substance on the street and the informant's experience with narcotics was shown to be considerable. Here, the substance was stated to be found in a private residence, and the complaint indicated merely that the informant had seen cocaine before and recognized the substance as cocaine.

■■ The trial court properly followed the precedent of *Palanza* even though it was decided by the appellate court for a different district. Under the rule currently followed in this State, rulings of an appellate court of any district are binding precedent on all the circuit courts if there are no contrary rulings of another district on the same issue but the rulings are not binding precedent upon the other districts of the appellate court. (*People v. Spahr* (1978), 56 Ill. App. 3d 434, 371 N.E.2d 1261.) We are not bound by the precedent of *Palanza*. However, we choose to follow it at least in connection with the situation here, where cocaine, a substance not distinctive in its powder form, was involved, and the only basis stated in the complaint for the informer's knowledge was that he had seen cocaine before. We share the concerns of the trial court but believe that if the

informer had a valid basis for thinking the substance to be cocaine, some aspects of that basis could have been articulated.

We also recognize the problems of law enforcement officials in assimilating all of the search and seizure rules. Judicial promulgation of different rules in different districts would add to the confusion. We deem that to be an added reason for our following *Palanza*.

Because of our ruling that the complaint for the search warrant was insufficient for the reasons stated, we need not consider defendant's claim, raised for the first time on appeal, that the complaint also failed to meet the requirement of *Aguilar*, that the complaint show the informer to be credible or his information to be reliable.

We affirm.

Affirmed.

TRAPP, P. J., and CRAVEN, J., concur.